## SHANNON *et al.* v. CITY OF HURON.

1. A city has no authority to incur indebtedness for expenses of a campaign to secure the selection of the city as the capital of the state.

2. Warrants issued in payment of such expenses are void.

3. Warrants issued by a city for current expenses, after the constitutional limit of indebtedness has been reached, but in anticipation of a tax already levied, are valid to the extent of the taxes levied.

4. Under Comp. Laws, Secs. 1671–1679, requiring city warrants to be paid in the order of their registration, and that the treasurer shall notify the holder, and set apart the money for his use, the fact that taxes collected after the issuance of a warrant have been paid out on other warrants subsequently issued will not prevent the holder of the unpaid prior warrant from recovering thereon; the treasurer having failed to notify him or set apart money for his use.

(Opinion filed Dec. 3, 1896.)

Appeal from circuit court, Beadle county. Hon. A. W. CAMPBELL, Judge.

Action to recover upon certain city warrants. From an order sustaining in part and overruling in part a demurrer to the answer, both parties appeal. Affirmed.

The facts are stated in the opinion.

*E. H. Aplin,* for plaintiffs.

Current taxes may be appropriated in anticipation of their receipt, to the payment of proper and ordinary and current expenses of a municipal corporation, as effectually as if they were, at the time of such apportionment, in the city treasury, and such appropriation is not the creation of a debt. 2 Dillon Mun. Corp.. 4th Ed., 1038; U. S. v. New Orleans, 98 U. S. 391; Norton v. Dyersburg, 127 U. S. 160. See, also, Grant v. Davenport, 36 Iowa 401; Coy v. Lyons, 17 Iowa 1; Coffin v. Davenport, 26 Id. 315; State v. McCauley, 15 Cal. 444; McCauley v. Brooks, 16 Id. 12; Koppikus v. State Cap. Com., Id. 254; People v. Pacheo, 27 Id. 213; State v. Medbury, 7 Ohio 523; Reynolds v. Mayor, 13 La. St. 426; Western Town Lot Co. v. Lane, 62 N. W. 958; *In re* State Warrants, 6 S. D. 518, 62 N.

W. 101.   The warrants in suit are not debts, within the consti-
tutional prohibition.   Hitchcock v. Galveston, 96 U. S. 659,
Co-Op. Ed.; Maher v. Chicago, 38 Ill. 266; Bank v. Bank, 21
N. Y. 490; Argenti v. San Francisco, 16 Cal. 256; Allegheny
City v. McClurkan, 14 Pa. St. 81; Bank v. North, 4 Johns. Ch.
470.

*A. W. Wilmarth*, for defendant.

The limitation of indebtedness having been reached and
passed, the city of Huron could not create any additional in-
debtedness for current expenses or for any other purpose dur-
ing the period in which the services were performed for the
payment of which said warrants were issued.   Lake County v.
Rollins  130 U. S. 662; Law v. People, 87 Ill. 385; French v.
Burlington, 43 Ia. 615; People v. May, 10 Pac. 641; Fuller v.
Chicago, 89 Ill. 382; 15 Am. & Eng. Encyc. of Law, 1125 and
1131; Board v. Hopkinsville, 23 L. R. A. 402.

FULLER, J.   This appeal is by both parties from an order
sustaining in part and overruling in part a demurrer to the an-
swer of the defendant to plaintiffs' complaint, on the ground
that the same "does not state facts sufficient to constitute a de-
fense to plaintiffs' cause of action," which is based upon five
city warrants, each of which is pleaded as a separate cause of
action, and three of which are for $100 each, of even date, and
as follows:   "Huron, South Dakota, Dec. 2, 1890.   No. 4,136.
The treasurer of the city of Huron will pay to the order of
Shannon & Longstaff one hundred dollars ($100.00), out of the
general fund of the city treasury not otherwise appropriated.
Account of Pub. Imp.   H. J. Rice, Mayor.   Attest: B. M. Row-
ley, Clerk."   In addition to the foregoing instruments, aggre-
gating $300, exclusive of interest, plaintiffs in this action seek
to recover upon the following warrants, purchased from and
duly assigned to plaintiffs by the payees named therein.
"Huron, Dakota, April 1, 1889, No. 2,701.   The city treasurer
of the city of Huron will pay to the order of Norman Olson

three dollars ($3.00), out of the general fund of the city treasury not otherwise appropriated. Account of labor. H. J. Rice, Mayor. B. M. Rowley, Clerk. [Seal.]" "Huron, Dakota, April 1, 1889. No. 2,708. The city treasurer of the city of Huron will pay to the order of R. Ramsell sixty dollars ($60.00) out of the general fund of the city treasury not otherwise appropriated. Account of March salary. H. J. Rice, Mayor. B. M. Rowley, Clerk. [Seal]."

It is alleged, among other defenses in the answer, that the three warrants for $100 each were drawn in favor of and delivered to plaintiffs at the instance and request of certain persons, interested in the sale of Huron real estate and farming lands adjacent thereto, who had been selected at a public meeting as a capital committee, for the purpose of bringing forward the city of Huron as a candidate for the capital of this state, and that, for the purpose of promoting and prosecuting said capital campaign, plaintiffs printed for said committee certain bills, pamphlets, circulars, letterheads and envelopes, well knowing that such material was to be used to procure votes in favor of said city as a candidate for the capital, and afterwards consented to and did accept, in full settlement therefor, these warrants, which said capital committee had, with the knowledge of plaintiffs, induced, without further consideration, the city council to issue on account of "public improvements." It is further shown, clearly, specifically, and at length, from the allegations of the answer, that at all material dates prior to and at the time of the execution of these $100 warrants to plaintiffs, and the $3 warrant to Olson for labor upon the streets, and the $60 warrant to Ramsell for services as city marshal, the indebtedness of the city of Huron had reached the limit of indebtedness allowed by law, and that a record thereof and all proceedings relative thereto fully appeared upon the public records of said municipal corporation; that on the date and at the time the indebtedness was created for which the warrants set out in the plaintiff's complaint were issued, and on the date and at the

time the warrants of the plaintiff were issued, the prior regis-
tered warrants, after subtracting all the money then in the city
treasury from their total amount, exceeded the total amount of
taxes levied to pay the expenses of the city of Huron during
the fiscal year in which the said warrants were issued, together
with the moneys received from fines and licenses, and the said
warrants of plaintiff are not drawn against any fund to create
which a tax had been duly levied, and they were not drawn
against any anticipated fund, which fund was to be collected
from a levy of taxes made by the city council of the city of
Huron to pay the indebtedness evidenced by such warrants, and
the said warrants were not drawn against any fund levied to
pay the current expenses of the city of Huron for any specific
year, or against any specific fund whatever.   *   *   *"

At the hearing of the argument of council, the court over-
ruled the demurrer as to the three warrants issued to plaintiffs
for $100 each, and sustained the same as to the $60 warrant
issued to Ramsell and the $3 warrant issued to Olson, both of
which were duly assigned to plaintiffs.   The constitution of
this state, legally adopted and ratified, was in full force at the
time plaintiffs entered into an agreement with the capital com-
mittee to do the printing for which three of the warrants in
suit were afterwards issued directly to plaintiffs; and Article
10 of Sec. 2 thereof provides that "no tax or assessment shall
be levied or collected, or debts contracted by municipal corpor-
ations, except in pursuance of law for public purposes specified
by law.   *   *   *"   The location of the state capital for the ben-
efit of private individuals was a matter wholly foreign to the
purposes and objects of the corporation, the charter of which
nearly expressly nor by implication authorized any of its offi-
cers to burden the municipality with debts incurred in further-
ance of the scheme; and the city was entirely powerless to
issue its warrants therefor.   Plaintiffs, the capital committee,
and all other persons dealing with the officers of the munici-
pality, had notice and were charged with a knowledge of the

law, under the limitations and restrictions of which no liability could be created or debt incurred against the city of Huron for printing capital campaign literature, and the warrants, when issued, were void in *toto.* As municipal corporations have only the powers expressly conferred by or proceeding from positive enactment, there is upon principle, no reasonable distinction between cases where acts have been performed without any lawful authority and such as involve the doing of something that is expressly prohibited. In all such instances, there being an entire absence of power, the acts are *ultra vires.* The distinction between the irregular exercise of power expressly, impliedly, or incidentally granted to a municipal corporation, and a total absence of such power, is so clearly elementary and well defined that elucidation is unnecessary. As a municipal corporation is forbidden by law and has no vested right or inherent power to contract debts and issue evidences thereof to advance the interests of individuals, no taxpayer of the city of Huron can be compelled to contribute money for the purpose of promoting a capital campaign, however much the inhabitants of the city might be personally benefited thereby. Under the constitutional provisions above cited, the statutes of this state, and the charter of the city of Huron, the delegated power of taxation can be used only for a public or governmental purpose, as distinguished from a private purpose, of which the case before us is a glaring example. Burr. Pub. Secur., Chap. 9, and numerous cases therein collated. The view we have taken renders it unnecessary to consider, in this connection, other defenses alleged in the answer; and we readily conclude that the trial court was fully justified in overruling the demurrer in so far as the same relates to allegations of said answer which pertain to the three warrants of $100 each.

When Olson and Ramsell rendered the services, in settlement for which each received one of the two remaining warrants, and at the time of the issuance thereof, the territorial organic law, then in force, provided that "no political or mu-

nicipal corporation, county or other subdivision in any of the territories of the United States shall ever become indebted in any manner or for any purpose to any amount in the aggregate including existing indebtedness, exceeding four per centum on the value of the taxable property, within such corporation, county or subdivision, to be ascertained by the last assessment for territorial and county taxes previous to the incurring of such indebtedness; and all bonds and obligations in excess of such amount given by such corporation shall be void." Comp. Laws, p. 34, § 112. According to the averments of the answer, which for the purposes of the demurrer must be taken as true statements of fact, the indebtedness of the city when these warrants were issued, and at all material dates prior to and during the performance of the services by Olson and Ramsell, exceeded the above limitation in the sum of $14,700.36; but, as a matter of law, no liability in excess of the limitation existed against the municipality, for the reason that it is not within the power of a municipal corporation to "become indebted in any manner or for any purpose" beyond the limitation fixed by a law, which amounts to an absolute, arbitrary prohibition, and expressly declares that all "obligations in excess of such amount given by such corporation, shall be void." The provision is so plain and transparent that no word, phrase or clause can be found anywhere in the language employed to express the will of the law-making power to which may be applied any recognized rule of construction. Consequently, all warrants beyond this constitutional barrier, erected to prevent the impairment of existing obligations and a ruinous rate of taxation, stands for naught, and, independently of taxes levied for current expenses, the valid outstanding warrants of the city were just equal to and wholly within the limitation fixed by law, when the warrants under consideration were drawn upon a general fund to create which a tax had been duly levied for the current expenses of the city during the period of twelve months commencing December 1, 1888, ending December 1,

1889, and denominated the "Fiscal Year of 1889." From the answer, and the undisputed averments of the complaint, it appears that of the $10,175.50 taxes lawfully levied August 6, 1888, presumptively for general city purposes for the ensuing fiscal year, $10,175 had been paid into the city treasury at the time Olson worked two days upon the streets and received therefor the $3 warrant, and at the time Ramsell as city marshal performed the services for which the $60 warrant was drawn; and that from December 1, 1888, to April 1, 1889, there had been issued by the city council warrants aggregating $9,734.75, and no more. It will thus be seen that the warrants drawn during the fiscal year, and prior to the date of the warrants issued to Olson and Ramsell, amounted to $440.75 less than the amount levied for that year; and, under such circumstances, this court has justified the issuance of warrants, for lawful purposes, in an amount equal to said levy, although the indebtedness for prior years had reached the constitutional limitation. "The fact that a municipality is indebted to the full constitutional limit does not prevent the same from levying such taxes as it is authorized to levy by law, and issuing its warrants within the limits of such levy in anticipation of their collection; and, so long as the warrants issued are within the amounts lawfully levied, they do not create an additional debt. To render such warrants invalid, it must affirmatively appear, therefore, that no tax had been provided for their payment when the taxes were issued." Town Lot Co. v. Lane (S. D.) 62 N. W. 982; *In re* State Warrants, Id. 101. The summary means provided by law and employed to enforce the collection of taxes renders almost certain the payment of all taxes lawfully levied; and, in legal effect and for the time being, the sum total so levied for the fiscal year and unappropriated thereto, whether collected or in process of collection, is deducted from the prior indebtedness of the municipality, the aggregate of which has reached the constitutional limitation. In other words, notwithstanding the limitation has

been reached, warrants may be issued for the authorized current expenses of any fiscal year to the full amount levied for that year, and for that purpose, without incurring any indebtedness beyond such limitation. Again, consider, as we must, the indebtedness by which the limitation was reached as an existing liability at the beginning of the fiscal year of 1889, augmented by the sum of all legal warrants drawn upon the city treasury during that year for current expenses; yet, so long as such amounts do not in the aggregate exceed the limited sum plus the amount of the levy, no additional indebtedness has been incurred thereby, and the warrants thus drawn are payable in the order of presentment for registration. Being legal warrants when issued, no subsequent act or misappropriation of funds by the city council could operate to render said warrants invalid.

Counsel's contention in support of his claim that plaintiffs cannot recover for the reason that taxes out of which these warrants might have been paid, amounting to $50,000, have been levied, collected and paid out upon warrants issued and registered subsequently to the date and registration of said warrants, and that plaintiffs are in consequence thereof guilty of negligence sufficient to defeat a recovery, is entirely without merit. As soon as money had been collected into the proper fund to pay one or both of these warrants in the order of registration, the law makes it the imperative duty of the city treasurer to so notify the owner and holder thereof, and to set apart said money for his use and benefit. Comp. Laws, §§ 1671–1679 inclusive; State v. Campbell (S. D.) 64 N. W. 1125. As this notice was not given, and the fund out of which plaintiffs' warrants should have been paid in the order of their presentment had been diverted and disbursed with the knowledge and consent of the city authorities, and without regard to the requirements of the statutory provisions above cited, there is no substantial ground upon which to base a holding that plaintiffs' right to recover has been lost by reason of laches, and the city is not in a

position to maintain such a defense. "There is nothing new in holding a municipality responsible for the want of fidelity of those who act for it. Suits of that kind are of daily occurrence." City of Chicago v. Sexton, 115 Ill. 230, 2 N. E. 263.

The view we have taken of the questions presented sustains the order of the trial court, which overrules the demurrer to the answer in so far as the same pertains to the three warrants, of $100 each, issued for an illegal purpose, and fully justifies the same as to that portion of the answer relating to the $3 warrant and the warrant for $60, issued for a current municipal purpose, after the limit had been reached, but in anticipation of a tax already levied for current expenses, of which $440.75 remained unappropriated at the date of said warrants, and at the time the labor was performed in consideration for which the same were issued. The order appealed from is therefore affirmed.